## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No.:

MINDY SZETO,

      Plaintiff,

v.

THE UNIVERSITY OF COLORADO,
by and through The Regents of the
University of Colorado, a body corporate;
and Arthur Gutierrez-Hartmann, Leslie
Lange, Ethan Lange, David Engelke, Cara
Wilson, Liz Bowen, Shanta Zimmer, John
Reilly, Jr., individuals in their official
capacities; unknown individuals designated
as John Does,

      Defendants.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

    1.    PLAINTIFF MINDY SZETO was a M.D./Ph.D. student at and employee of the University of Colorado at its Anschutz Medical Campus.

    2.    Following complaints of gender discrimination, harassment, and retaliation by Plaintiff, Defendant the University of Colorado (the "University") and several of its employees (named herein as Defendants) engaged in a years' long pattern of retaliation culminating in the dismissal of Plaintiff from her educational program at the University.

1

3. As a result of Defendants' retaliatory actions, Plaintiff lost the educational opportunity to complete both her M.D. and Ph.D. degrees at the University of Colorado.

4. Plaintiff seeks to her rights under Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681, et seq., and its implementing regulations.

## PARTIES

5. Plaintiff is a resident of the State of Colorado.

6. From 2014–2020, Plaintiff was enrolled in the combined M.D./Ph.D. program at the University of Colorado Anschutz Medical Campus located in Aurora, Colorado.

7. At all relevant times, the University of Colorado was an educational institution as defined by 28 U.S.C. §1681, *et seq*.

8. Defendant University is a system of public universities in the State of Colorado consisting of four campuses, including the Anschutz Medical Campus located in Aurora, Colorado.

9. At all relevant times herein, Defendant University was a Federal funding recipient as defined by 28 U.S.C. § 1681, *et seq*.

10. Defendant University is operated and governed autonomously by The Regents of The University of Colorado ("The Regents").

11. The Regents have exclusive control of all funds and appropriations to the University unless otherwise provided by law.

12. Defendants Arthur Gutierrez-Hartmann, Leslie Lange, Ethan Lange, David Engelke, Cara Wilson, Liz Bowen, Shanta Zimmer, and John Reilly, Jr. (the "Individual Defendants") are all residents of the State of Colorado and were employed at various times by the Defendants University in various capacities during the course of the events set forth herein.

13. Other Defendants, designated herein as John Does, were also employees of or otherwise associated with the University or its affiliates and whose acts and/or omissions contributed to the wrongdoing set forth below, but whose identities are not yet known but which will be determined during discovery.

14. Upon information and belief, the Office of the Vice President and University Counsel is authorized to waive service of the Complaint or accept service of legal documents on behalf of the University and all Defendants.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction because this case contains a Federal question under 28 U.S.C. § 1331.

16. This Court has personal jurisdiction over Defendants University because Defendant is a subdivision of the State of Colorado.

17. This Court has personal jurisdiction over the Individual Defendants because they are all residents of the State of Colorado.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b) because the events or omissions giving rise to the claims alleged herein occurred within the Judicial District of Colorado.

19. Defendant University's administrative offices are located in the City and County of Denver, Colorado.

## BACKGROUND

20. The University offers a dual degree Medical Scientist Training ("MST") post graduate studies program at Defendant's Anschutz Medical Campus in which students can obtain

both a Ph.D. and an M.D. degree in a coordinated program that saves significant time and money over completing the degrees separately.

21. The University's MST Program begins with the first two years of medical school curriculum followed by a Ph.D. curriculum (that generally take four to five years), followed by completion of the medical school curriculum over a further two years.

22. In the Ph.D. portion of the Program, MST Program students are allowed to choose from graduate programs at the Anschutz Medical Campus, such as the Human Medical Genetics and Genomics Graduate Program ("HMGGP") or Molecular Biology ("MOLB"); students can also take the Ph.D. portion of their program at the University of Colorado at Boulder campus.

## FACTS

23. Plaintiff began the University's MST Program in the summer of 2014.

24. Dr. Arthur Gutierrez-Hartmann was the Program Director for the MST Program as of Plaintiff's entrance to the program.

25. Plaintiff made disclosures/complaints to Defendants individually or collectively about sexual harassment and retaliation she experienced at the hands of Gutierrez-Hartmann following her entry to the program.

26. In March 2018, Plaintiff joined Dr. Leslie Lange's research laboratory for the Ph.D. portion of the MST Program.

27. On June 4, 2020, during a phone call with Dr. L. Lange, Plaintiff told Dr. L. Lange that she believed that Gutierrez-Hartmann was deliberately retaliating against her based on the pending Title IX complaints Plaintiff had made against Gutierrez-Hartmann.

28. Plaintiff also reiterated a previous complaint that Gutierrez-Hartmann had retaliated against her by directing her mentors to misattribute Plaintiff's research.

29. During this conversation, Dr. L. Lange told Plaintiff that she could not guarantee Plaintiff's authorship, or give Plaintiff credit, for the work Plaintiff had done.

30. On June 14, 2020, Plaintiff scheduled a videoconference "Zoom" meeting with Dr. Lange with the purpose of presenting her thesis progress to Dr. L. Lange.

31. Dr. L. Lange did not attend the scheduled meeting but followed up by phone later that day.

32. Dr. Ethan Lange, husband of Dr. L. Lange, offered to be Plaintiff's thesis advisor later on June 14, 2020.

33. On June 15, 2020, Plaintiff discovered that Dr. L. Lange blocked Plaintiff from accessing Dr. L. Lange's lab server, that access to Plaintiff's thesis data was revoked, and that Plaintiff was locked out from accessing Dr. L. Lange's weekly lab Zoom meeting.

34. On June 22, 2020, Plaintiff discovered that Dr. L. Lange, and her husband, Dr. E. Lange, both refused to act as her thesis advisor going forward.

35. On June 29, 2020, Dr. L. Lange sent Plaintiff a letter informing Plaintiff that she was being dismissed from Dr. L. Lange's lab.

36. Throughout July 2020, Plaintiff told members of the University's faculty and administration that she experienced sexual harassment and retaliation by Gutierrez-Hartmann, and that Dr. L. Lange was retaliating against her for opposing discrimination and for reporting the discrimination to Defendants, including to Dr. L. Lange.

37. On July 1, 2020, the University informed Plaintiff that, in order to remain in the HMGGP, she would need to find a new thesis advisor in HMGGP before July 31, 2020—a mere thirty days.

38. However, Plaintiff was unable to secure a new thesis advisor within HMGGP through no fault of her own.

39. On August 3, 2020, Plaintiff received a letter from the University notifying her that she was dismissed from the HMGGP, effective immediately.

40. Subsequently, on August 6, 2020, as a result of her dismissal from the HMGGP, Plaintiff was informed of her impending dismissal from the Graduate School which would become effective August 13, 2020.

41. On August 7, 2020, Plaintiff met with Dr. Angelo D'Alessandro, of the University's Molecular Biology ("MOLB") program, to discuss the prospect of Dr. D'Alessandro being Plaintiff's thesis advisor in another Ph.D. program within the graduate school.

42. Despite being qualified as a thesis advisor and D'Alessandro's agreement to accept Plaintiff, on August 12, 2020, Plaintiff was told by the MOLB program administration that the MOLB program would not accept Plaintiff as a graduate student.

43. On August 13, 2020, Plaintiff submitted an appeal of her dismissal to the University's Graduate School Dean, Dr. David Engelke ("Engelke").

44. On August 17, 2020, Engelke emailed Plaintiff to notify her that her appeal was denied, and that her dismissals from the HMGGP program and the Graduate School would stand.

45. On August 18, 2020, Plaintiff received an email from Liz Bowen ("Bowen"), the Program Administrator for the University's MST Program.

6

46. This email included an attached document outlining the University's proposed grounds for dismissal.

47. Among the proposed grounds for dismissal were pretextual allegations that: (i) Plaintiff exhibited professionalism issues; (ii) Plaintiff made poor progress in her Ph.D. work; and (iii) Plaintiff has been dismissed from both the HMGGP and the Graduate School.

48. In her August 19, 2020, meeting with Cara Wilson ("Wilson") (who replaced Gutierrez-Hartmann as MSTP director), Bowen, Plaintiff, Plaintiff's former counsel, and the University's counsel, Kimberly Spiering ("Spiering"), Plaintiff again complained about Title IX retaliation by Gutierrez-Hartmann.

49. Plaintiff also asked for documentation of the professionalism issues cited in the dismissal letter during this meeting.

50. The University provided pretextual letters and memoranda dating back to Plaintiff's initial complaints of harassment and retaliation establishing retaliation by Defendants.

51. However, the University did not initiate a Title IX retaliation investigation at this time despite being made aware of the allegations of retaliation by Plaintiff.

52. On September 9, 2020, the University dismissed Plaintiff from the MST Program.

53. On October 16, 2020, the University confirmed that the MST Program sent the entire dismissal packet, including the 2017 Gutierrez-Hartmann letters, to the medical school Promotions Committee.

54. On October 27, 2020, Plaintiff was notified by the University's medical school Promotions Committee that, after review of Plaintiff's dismissal from MST Program and the supporting documentation included with that decision, and before she would be allowed to

7

continue in the medical school program, she would need to be evaluated by the Colorado Physicians Health Program (the "CPHP").

55. The University did not provide a lawful (non-pretextual) explanation to establish why Plaintiff was in need of an evaluation.

56. Plaintiff administratively appealed the directive to be evaluated by the CPHP.

57. Despite there being no lawful basis to order the evaluation, on November 24, 2020, Plaintiff volunteered to undergo the same evaluation demanded by the University if performed by a neutral evaluator, and offered the names of six (6) neutral, alternative psychiatric evaluators that could perform the requested assessment independently of the Defendants and, therefore, without Defendants' retaliation tainting the results.

58. The University refused to accept Plaintiff's proposed alternative neutral psychiatric evaluators and told Plaintiff that a failure to comply with its directive would result in dismissal from the Medical School.

59. On November 25, 2020, Plaintiff again complained about ongoing Title IX issues.

60. Plaintiff complained about retaliation by Gutierrez-Hartmann through the CPHP evaluators because he had previously threatened Plaintiff that he knew people at the CPHP, implying that he would abuse his personal connections to further retaliate against Plaintiff using the CPHP referral both as a pretext for retaliation and the tool with which to carry out the retaliation.

61. On November 30, 2020, Defendants denied Plaintiff's appeal regarding evaluation by the CPHP.

62. On December 10, 2020, Plaintiff again complained about Title IX retaliation.

8

63.     On this date, Plaintiff also requested a transfer letter so she could attempt to complete her education at another educational institution free of Defendants' retaliation.

64.     On December 11, 2020, Dean Shanta Zimmer stated that, if Plaintiff was not evaluated by CPHP by December 18, 2020, she would be dismissed from the medical school.

65.     Later that day, on December 11, 2020, Plaintiff sent Defendants a copy of the complaint she filed with the U.S. Department of Education Office for Civil Rights ("OCR") regarding Defendants' violations of Title IX, including the retaliatory referral to the CPHP.

66.     On January 20, 2021, Defendants sent Plaintiff another communication threatening dismissal from Defendants' Medical School.

67.     On January 29, 2021, Plaintiff placed a telephone call to the CPHP.

68.     During this call, the CPHP confirmed that Plaintiff was being referred to the CPHP for issues related to professionalism and her alleged failure to stay connected with the program; no explanation was provided for how either issue could constitute a health issue justifying a referral to a health program.

69.     Also, during this call the CPHP confirmed that it knew about the unresolved sexual harassment allegations Plaintiff had made, which Defendants mentioned when it referred Plaintiff to the CPHP, confirming that Gutierrez-Hartmann had followed through on his threat of retaliation.

70.     While the above was ongoing, Plaintiff applied to medical school at Louisiana State University ("LSU").

71.     On February 4, 2021, Plaintiff asked Defendants about her transfer letter so she could provide it to LSU.

9

72. On February 5, 2021, Defendants again threatened to dismiss Plaintiff from Medical School if she did not submit to evaluation by the CPHP.

73. Plaintiff again inquired about her transfer materials for LSU on February 8, 2021.

74. Thereafter, Defendants sent a transfer letter to LSU.

75. However, Defendants mislead LSU by indicating that Plaintiff took four years off of medical school, when in fact Plaintiff had been attending the University's MST Program during that period.

76. As a result, on February 15, 2021, Plaintiff filed another complaint with the University's Title IX office regarding retaliation.

77. Following this complaint, Defendants' Title IX office finally initiated an investigation.

78. Defendants then postponed Plaintiff's dismissal from medical school until Defendants' Title IX office concluded its investigation.

79. On March 30, 2021, LSU requested another transfer letter—this time signed by medical school Dean, John Reilly Jr.

80. This letter was the same as the prior letter; Defendants did not mention Plaintiff's attendance in the MST Program, but made it appear as though she was trying to come back to medical school after a four-year absence.

81. On April 28, 2021, Plaintiff interviewed at LSU.

82. On June 22, 2021, LSU denied Plaintiff admission to its program.

83. Upon information and belief, and subject to discovery, LSU denied Plaintiff's admission to its program because of the misleading letters sent by Defendants, and would have admitted Plaintiff but for these letters.

84. As a result of the misleading letter sent to LSU, Defendants successfully blackballed Plaintiff from an educational opportunity at another institution.

## CLAIMS FOR RELIEF

### COUNT I – TITLE IX RETALIATION (2020–2021 CPHP Referrals) (All Defendants)

85. Plaintiff incorporates by reference all paragraphs above and below unless contradicted by the contents of this section.

86. Plaintiff engaged in protected activity by complaining about and opposing gender discrimination, sexual harassment, and retaliation, as prohibited by Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*

87. Defendants took adverse action against Plaintiff by requiring Plaintiff to attend an unnecessary psychiatric evaluation in retaliation for complaining about and opposing gender discrimination, sexual harassment, and retaliation, in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*

88. Defendants' actions as described herein caused Plaintiff to suffer the humiliation and indignity of having her mental health called into question and suffered mental and physical damage as a result of Defendants' discrimination and retaliation.

89. Plaintiff seeks monetary damages, as well as other relief provided to her by law.

**COUNT II – TITLE IX RETALIATION (Dismissal from Ph.D. Program) (All Defendants)**

90. Plaintiff incorporates by reference all paragraphs above and below unless contradicted by the contents of this section.

91. Plaintiff engaged in protected activity by complaining about and opposing gender discrimination, sexual harassment, and retaliation as prohibited by Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*

92. Defendants took adverse action against Plaintiff by refusing to evaluate Plaintiff's thesis, resulting in her dismissal from the Ph.D. portion of her program, in retaliation for her complaining about and opposing gender discrimination, sexual harassment, and retaliation, in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*

93. Defendants' actions as described herein caused Plaintiff to suffer the humiliation and indignity of being dismissed from her degree program based on discrimination and retaliation, and lost future earnings because of her inability to complete her Ph.D. program.

94. Plaintiff seeks monetary damages, as well as other relief provided to her by law.

**COUNT III – TITLE IX RETALIATION (Constructive Dismissal from Medical School) (All Defendants)**

95. Plaintiff incorporates by reference all paragraphs above and below unless contradicted by the contents of this section.

96. Plaintiff engaged in protected activity by complaining about and opposing gender discrimination, sexual harassment, and retaliation as prohibited by Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*

97. Defendants took adverse action against Plaintiff by threatening to dismiss (and constructively dismissing insofar as they have not permitted Plaintiff to continue medical school) Plaintiff from the medical school portion of her program in retaliation for her complaining about and opposing gender discrimination, sexual harassment, and retaliation, in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*

98. Defendants' actions as described herein caused Plaintiff to suffer the humiliation and indignity of being of being dismissed from her medical degree program based on discrimination and retaliation, and lost future earnings because of her inability to complete her M.D. program.

99. Plaintiff seeks monetary damages, as well as other relief provided to her by law.

### COUNT IV – TITLE IX RETALIATION (Blackballing) (All Defendants)

100. Plaintiff incorporates by reference all paragraphs above and below unless contradicted by the contents of this section.

101. Plaintiff engaged in protected activity by complaining about and opposing gender discrimination, sexual harassment, and retaliation as prohibited by Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*

102. Defendants took adverse action against Plaintiff by blackballing Plaintiff from other programs in retaliation for her complaining about and opposing gender discrimination, sexual harassment, and retaliation, as prohibited by Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 *et seq.*

103. As a result of Defendants' actions as described herein, Plaintiff suffered the indignity of being unable to attend another medical school due to Defendants' discrimination and retaliation and has lost future earnings as a result of being unable to complete medical school.

104. Plaintiff seeks monetary damages, as well as other relief provided to her by law.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF prays that this Honorable Court enter an order:

A) Declaring that Defendants violated Plaintiff's rights under Title IX as set forth herein;

B) Granting Judgment in favor of Plaintiff on all counts, including an award of monetary damages as set forth herein, including but not limited to future damages and pre- and post-judgment interest;

C) Awarding Plaintiff attorneys' fees and costs pursuant to 42 U.S.C. § 1988, and any other applicable statutes; and

D) Granting such other relief as this Court deems just and proper.

**JURY TRIAL DEMANDED ON ALL COUNTS SO TRIABLE.**

DATED: June 27, 2022

      Respectfully submitted,

      HALL, ESTILL, HARDWICK, GABLE, GOLDEN & NELSON, P.C.

      /s/ J. Kirk McGill
      Joshua Kirk McGill, Esq.
      1600 Stout St., STE 1100
      Denver, Colorado 80202
      (303) 607-5450
      kmcgill@hallestill.com
      *Counsel for Plaintiff Mindy Szeto*