IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01592-LTB

MINDY SZETO,

    Plaintiff,

v.

UNIVERSITY OF COLORADO, through its governing body, THE REGENTS OF THE UNIVERSITY OF COLORADO, a body corporate, et al.,

    Defendants.

## DEFENDANTS' MOTION TO DISMISS UNDER F.R.C.P. 12(b)(6)

Defendants the University of Colorado through its Board of Regents (the "University") and L. Lange, E. Lange, Taylor, and Shaikh ("Individual Defendants") respectfully move to dismiss Plaintiff's First Amended Complaint (ECF 12) for failure to state a claim. The University moves to dismiss Claims One through Four because Plaintiff has not set forth plausible facts to support her retaliation claims under Title IX or the discrimination claim under Title II of the ADA; the Individual Defendants move to dismiss Plaintiff's Section 1983 claim for failure to state a claim and based on qualified immunity.

### BACKGROUND

Plaintiff enrolled in the University's Medical Scientist Training (MST) dual-degree program in the summer of 2014. (Am. Compl., ECF 12, ¶ 23.) The MST program consists of two

components: successful completion of an M.D. degree at the University's School of Medicine (Medical School) and successful completion of a Ph.D. degree in the Graduate School's Human Medical Genetics and Genomics Graduate Program (HMGGP) or the Molecular Biology Program (MOLB). (ECF 12, ¶¶ 20-22.) After completing two years at the Medical School, in 2016, Plaintiff went on a leave of absence, per the MST program's procedures, and started the Ph.D. portion of her studies at the University's Graduate School. (ECF 12, ¶ 21.) Starting sometime in 2016 and continuing into 2017, Plaintiff experienced family and health issues and missed important requirements of the MST program. (ECF 12, ¶¶ 30, 31.) Due to the health issues that Plaintiff was continuing to experience, in 2017, the Medical School's Promotions Committee issued a letter recommending that Plaintiff undergo an evaluation by the Colorado Physicians Health Program (CPHP). (ECF 12, ¶ 34.) Plaintiff did not.

In 2018, the Promotions Committee determined that an evaluation by the CPHP would be required before Plaintiff could resume her medical studies. (ECF 12, ¶ 41.) However, because Plaintiff was solely enrolled in the Ph.D. portion of her MST degree program at the time, the Promotions Committee suspended that requirement. (ECF 12, ¶ 48.)

In March 2018, Plaintiff began working at Defendant Leslie Lange's research laboratory, with Dr. L. Lange as her Ph.D. thesis advisor. (ECF 12, ¶ 46.) In March 2019, Plaintiff began accusing Dr. L. Lange of not providing Plaintiff authorship credit for her research. (ECF 12, ¶¶ 50, 55, 57.) She alleges that she repeated those accusations to Defendant Ethan Lange, Dr. L. Lange's husband, as well as to the MST program director Dr. Wilson and to the thesis committee chair Defendant Matthew Taylor in 2019 and 2020. (ECF 12, ¶¶ 50, 53.) She also alleges that in February 2020, she "ma[d]e disclosures" regarding Dr. L. Lange to her thesis committee

2

members. (ECF 12, ¶ 52.) Following those accusations, according to the Amended Complaint, on June 22, 2020, Defendants L. Lange and E. Lange refused to serve as Plaintiff's thesis advisor going forward. (ECF 12, ¶ 62.) Plaintiff complained about Dr. L. Lange to Defendant Shaikh. (ECF 12, ¶ 64.)

Plaintiff was given until July 31, 2020 to find a new thesis advisor. (ECF 12, ¶ 66.) According to Plaintiff, she approached Defendant Taylor, who did not agree to serve as her thesis advisor. (ECF 12, ¶ 67.) There are no allegations that Plaintiff made further attempts to secure a new thesis advisor in the HMGGP. Accordingly, on August 3, 2020, she was dismissed from the HMGGP track of the Graduate School. (ECF 12, ¶ 68.) She appealed the dismissal to the Graduate School Dean Dr. David Engelke, who affirmed the dismissal. (ECF 12, ¶¶ 72-73.) Plaintiff alleges that she also tried to secure a thesis advisor in the other track—the University's Molecular Biology (MOLB) program—but MOLB did not accept her as a graduate student. (ECF 12, ¶¶ 70-71.) There are no allegations that Dean Engelke or the MOLB administration had any knowledge of Plaintiff's prior complaints.

Because Plaintiff was not enrolled in either the HMGGP or the MOLB track of the MST dual-degree program, she was dismissed from the Graduate School and, subsequently, from the MST dual-degree program. (ECF 12, ¶¶ 74-76, 81.) However, Plaintiff retained the option to continue her medical studies at the Medical School. (ECF 12, ¶ 83.) The Medical School's Promotions Committee reminded Plaintiff of the requirement that Plaintiff undergo an evaluation at the CPHP before she could resume her studies as a medical student. (ECF 12, ¶ 83.) Plaintiff appealed the requirement, and the appeal was denied. (ECF 12, ¶¶ 85-90.) There are no

3

allegations that the Promotions Committee or the persons considering Plaintiff's appeal were aware of any of Plaintiff's prior complaints.

Plaintiff refused to comply with the Promotions Committee requirement, despite being warned several times that failure to comply could lead to her dismissal from the Medical School. (ECF 12, ¶¶ 87, 93, 95, 101.) Instead, Plaintiff requested a transfer letter for her application to the Louisiana State University medical school, which the University provided. (ECF 12, ¶¶ 92, 99-100, 102-103, 108-109.) About a month after receiving the transfer letter from the Dean of the School of Medicine, LSU interviewed Plaintiff for admission. (ECF 12, ¶ 110.) Following the interview, LSU denied Plaintiff admission. (ECF 12, ¶ 111.) Without any factual support, Plaintiff alleges that her admission was denied because the Dean's transfer letter did not mention that her leave of absence from the School of Medicine was due to the MST program's requirements to complete the Ph.D. degree—an easily verifiable fact in her interview and based on her transcripts. (ECF 12, ¶ 109, 112-113.)

Plaintiff's lawsuit is centered around her allegation that in 2016, Dr. Arthur Gutierrez-Hartmann, then Director of the MST program, sexually harassed her by "touch[ing] Plaintiff inappropriately" and comparing her to his ex-wife, and that she complained about it to various University employees between 2017 and 2021. (ECF 12, ¶ 25-27, 36-40, 43, 45, 52-53, 65, 77, 94, 105.) She now claims that—all in retaliation for her complaint about Dr. Gutierrez-Hartmann—(1) Drs. Lange refused to serve as her thesis advisors; (2) Defendant Taylor refused to serve as her thesis advisor; (3) she was dismissed from the Graduate School; (4) the Medical School's Promotions Committee required her to undergo an evaluation at the CPHP; and (5) the Medical School's transfer letter to LSU did not explain the reason for her leave of absence. She

4

peppers the Amended Complaint with allegations of "disclosures" to various University faculty and administration—at times without specifying the identity of these persons (*see, e.g.* ECF 12, ¶¶ 88, 91)—in an effort to establish a causal link between her so-called "disclosures" of conduct allegedly occurring several years prior and the consequences of her not completing the University's requirements. An examination of her allegations demonstrates that no such link exists. Accordingly, her claims should be dismissed under F.R.C.P. 12(b)(6).

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To withstand such a motion, a complaint must contain enough allegations of fact to nudge the plaintiff's claims across the line from conceivable to plausible. *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). General or bare assertions of discrimination and retaliation, without details, are insufficient. *Id.* at 1193. In short, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

## ARGUMENT

**I.    Plaintiff has failed to set forth plausible factual allegations in support of her retaliation claims under Title IX.**

To state a retaliation claim under Title IX, "a plaintiff must allege that: (1) [s]he engaged in protected activity; (2) the defendant had knowledge of the protected activity; (3) materially adverse school-related action was taken against the plaintiff; and (4) there was a causal

5

connection between the protected activity and the adverse action." *Doe v. Rocky Mountain Classical Acad.*, No. 119CV03530DDDNYW, 2022 WL 16556255, at *9 (D. Colo. Sept. 30, 2022) (citation omitted). In a Title IX retaliation claim, once the defendants proffer a "legitimate, nondiscriminatory" reason for their action, the plaintiff must show is it is "pretextual." *Hiatt v. Colorado Seminary*, 858 F.3d 1307, 1316 (10th Cir. 2017).

Plaintiff alleges that the following events were in retaliation for her "disclosures" of alleged sexual harassment by Dr. Gutierrez-Hartman: (1) referral to the CPHP and constructive discharge from the SOM (First Claim for Relief); (2) dismissal from the Graduate School (Second Claim for Relief); and (3) "blackballing" through the transfer letter to LSU (Third Claim for Relief). As discussed below, Plaintiff's claims fail for lack of causation.

  i. <u>First Claim for Relief – Referral to the CPHP and Constructive Discharge from the Medical School</u>

Plaintiff claims that the University took materially adverse action against her when the Promotions Committee required her to be evaluated by the CPHP prior to resuming her studies in the Medical School. Because Plaintiff refused to comply with this requirement, Plaintiff alleges she has been constructively discharged from the Medical School.

As an initial matter, Plaintiff does not point to any facts supporting her claim that the Promotions Committee's referral to the CPHP is a materially adverse school-related action. The Amended Complaint alleges that Plaintiff had "serious physical health issues" that interfered with her ability to complete important exams. (ECF 12, ¶¶ 30-31.) Accordingly, the Promotions Committee required that she be evaluated by the CPHP before she could return to the Medical School. Plaintiff has not alleged that the referral was outside the authority of the Promotions Committee, that the referral was punitive, that complying with the requirement would adversely

6

affect her student standing, or that it would impose financial or other burdens on her. In short, Plaintiff has failed to establish that the requirement that she be evaluated by the CPHP was a materially adverse action. *Cf. Doe v. Bd. of Educ. of the Primero Reorganized Sch. Dist. RE-2*, No. 119CV00746DDDKMT, 2020 WL 12432441, at *14 (D. Colo. June 18, 2020) ("withdrawal of a privilege can constitute a materially adverse action for a retaliation claim under Title IX").

Next, even were it an adverse action, Plaintiff has not alleged that any member of the Promotions Committee was aware of her protected conduct when it referred Plaintiff to the CPHP. The referral to the CPHP, according to the Amended Complaint, occurred on October 4, 2017 (ECF 12, ¶ 34.) Plaintiff claims the referral was based on "perceived disability," not in retaliation for protected activity. But Plaintiff admits that this referral followed her "serious physical health issues," (ECF 12, ¶ 30), and claims the referral was based on "perceived disability," not in retaliation for protected activity.

The next referral occurred on or about January 22, 2018. (ECF 12, ¶ 41.) Plaintiff refers to this as a "repeated" referral but does not allege that the basis for this referral had changed from just three months prior, when she claims it was based on her perceived disability. Moreover, she does not allege who the members of the Promotions Committee were, nor does she allege that they were notified of her alleged disclosures to the Title IX coordinator, Dean Anderson, or the Ombudsperson. (*See* ECF 12, ¶¶ 36-40.) There are no facts from which an inference can be drawn that the Promotions Committee members were notified of these disclosures when they referred her to the CPHP.

The Promotions Committee next reminded Plaintiff of the CPHP requirement on October 27, 2020, following her dismissal from the Graduate School. (ECF 12, ¶ 83.) She alleges that the

7

"MST Program sent the entire dismissal packet consisting of pretextual letters and memoranda, including letters written by Gutierrez Hartmann in 2017, to the medical school Promotions Committee." (ECF 12, ¶ 82.) But Plaintiff does not allege that the dismissal packet included any indication that Plaintiff had engaged in protected activity. Nor does she allege that she informed the Promotions Committee that she had engaged in such activity.

She alleges that her appeal of the Promotions Committee's requirement was rejected by "Defendants." She does not specify who these "Defendants" were that considered her appeal and whether these individuals were aware of her alleged protected activities. (ECF 12, ¶ 90.)

In sum, Plaintiff has not stated any facts to support her claim that the Promotions Committee made the referral to the CPHP because of her complaints. As to constructive discharge, Plaintiff admits that the Promotions Committee repeatedly warned her that failure to comply with the Promotions Committee's requirements, including the requirement to be evaluated by the CPHP, would result in dismissal. (ECF 12, ¶¶ 87, 93, 95, 101.) Plaintiff admits she did not comply with these requirements. Accordingly, Plaintiff has failed to show that her constructive discharge from the Medical School was in retaliation for protected activity.

    ii. <u>Second Claim for Relief – Dismissal from the Ph.D. Program</u>

Plaintiff claims that her dismissal from the Ph.D. Program in 2020 was in retaliation for her complaints about Dr. Gutierrez-Hartmann's alleged conduct in 2016. But the allegations in the Amended Complaint tell a different story.

Plaintiff admits that starting in 2019, she accused her thesis advisor, Dr. L. Lange, of misattributing her research and not giving her authorship credit. (ECF 12, ¶¶ 50, 55.) Following that accusation, Dr. L. Lange refused to continue as Plaintiff's thesis advisor. (ECF 12, ¶ 62.)

8

Plaintiff vaguely alleges that during a phone call in which she and Dr. L. Lange discussed Plaintiff's accusations regarding Dr. L. Lange's practices, Plaintiff "believed that Gutierrez-Hartmann was deliberately retaliating against her based on the pending Title IX complaints Plaintiff had made against Gutierrez-Hartmann." (ECF 12, ¶ 55.)[1] But there are no plausible allegations to tie Plaintiff's mention of concerns about retaliation from Dr. Gutierrez-Hartmann to Dr. L. Lange's decision to resign as Plaintiff's thesis advisor, in light of the other, more obvious conflict between them regarding authorship credit. And Plaintiff's alleged complaint about Dr. L. Lange's "handling of academic and research issues" is not protected activity under Title IX, as it does not involve any complaint about sex discrimination. *See Hiatt*, 858 F.3d at 1315 ("Title IX [] prohibits retaliation against individuals *because they have complained of sex discrimination*.") (emphasis added). Accordingly, a retaliation claim under Title IX based on complaints of "handling academic and research issues" does not stand.

Plaintiff then admits she was unable to secure another thesis advisor. She only offers a conclusory allegation that Dr. Taylor refused to serve in retaliation for her complaints, with no other facts to support her claim. (ECF 12, ¶ 67.) Plaintiff does not allege any other efforts to secure a thesis advisor or request additional time to do so. And Plaintiff admits that her dismissal from the Ph.D. program was due to her not having a thesis advisor, not due to retaliation for allegedly complaining about Dr. Gutierrez-Hartmann. (ECF 12, ¶ 69.)

---

[1] Plaintiff also alleges that Dr. E. Lange was also on the call where she mentioned her concerns about retaliation from Dr. Gutierrez-Hartmann. Following that call, Dr. E. Lange allegedly offered to be her thesis advisor, but then refused a week later. These allegations do not plausibly allege any retaliation by Dr. E. Lange.

9

      iii.  <u>Third Claim for Relief – "Blackballing."</u>

Plaintiff alleges that she chose to apply to a different medical school, at LSU, and requested a transfer letter from the Medical School. She claims that she was not admitted to LSU, despite being selected to interview there, because the transfer letter sent from the Medical School did not explain why she had been on a leave of absence since 2016. (ECF 12, ¶¶ 99-111.)

Plaintiff does not allege that the Medical School was required to explain the structure of the MST program in the transfer letter yet failed to do so. More importantly, she does not allege that she could not explain that the leave of absence was due to the structure of the MST program, which required such leave to allow Plaintiff to complete the Ph.D. portion. Indeed, Plaintiff admits she was granted and attended an interview with LSU. (ECF 12, ¶ 110.) A reasonable inference would support that Plaintiff, as well as her application materials, such as her transcripts, would have easily explained the leave of absence. Yet, Plaintiff makes the leap, without any factual support, that she was not admitted to LSU because of the transfer letter. Not only is there no plausible support for this allegation, it simply defies logic. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

**II.    Plaintiff has not plausibly alleged discrimination under Title II of the ADA.**

For her fourth claim for relief, Plaintiff repackages her first claim— alleged constructive discharge from the SOM in retaliation under Title IX—into a Title II discrimination claim based on perceived disability. Even assuming, without conceding, that Plaintiff was regarded as having a disability, the claim fails for the same reason the first claim fails: Plaintiff has not shown that

the Promotions Committee's referral to the CPHP program was a punitive or adverse action, given Plaintiff's history of "serious physical illness" and subsequent dismissal from the Graduate School. And Plaintiff admits that her constructive discharge from the Medical School was based on her refusal to comply with the Promotions Committee's requirement. (ECF 12, ¶ 101.)

Accordingly, Plaintiff has failed to allege that she was excluded from a benefit or a program by reason of her perceived disability. *See J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016) (to state a viable claim under Title II of the ADA, a plaintiff must allege "(1) that he or she is a qualified individual with a disability; (2) that he or she was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.").

### III.   Plaintiff has failed to state a claim against the Individual Defendants.

#### A.   Official-capacity claims.

First, Plaintiff cannot state a claim for damages under Section 1983 against the Individual Defendants in their official capacity because they are not "persons" under Section 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 63–68 (1989) (holding that in light of Section 1983's language and legislative history, "a State is not a person within the meaning of § 1983"); *see also id.* at 71, n.10 (excepting from its holding only claims for prospective injunctive relief against a state official sued in official capacity). In addition, Section 1983 claims for damages against public officials sued in their official capacity are barred by the Eleventh Amendment. *See Elephant Butte Irr. Dist. of New Mexico v. Dep't of Interior*, 160 F.3d 602, 607-08 (10th Cir.

1998). To the extent Plaintiff is seeking prospective injunctive relief against these Defendants in their official capacity, her claim fails for the same reasons discussed below.

### B. Individual-capacity claims.

When alleging a § 1983 action against a government employee in his or her individual capacity, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. This is especially true where Plaintiff has named "a number of government actors sued in their individual capacities." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008). To establish a claim of retaliation for exercising her First Amendment rights, Plaintiff must show that: (1) she engaged in a constitutionally protected activity; (2) each Individual Defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in the activity; and (3) her exercise of the constitutionally protected activity substantially motivated each Individual Defendant's adverse action. *See Van Deelen v. Johnson*, 497 F.3d 1151, 1155–56 (10th Cir. 2007).

Even assuming, for the purpose of this motion, that Plaintiff has satisfied the first two elements of the claim, Plaintiff has not shown that her dismissal from the Graduate School was substantially motivated by her complaints regarding Dr. Gutierrez-Hartmann and Dr. L. Lange. Indeed, Plaintiff admits that she was dismissed from the Graduate School because in 2020, at the end of the four-year leave of absence from the Medical School during which she was supposed to have completed her Ph.D., she was unable to secure a thesis advisor for her Ph.D. (ECF 12, ¶ 144 ("Defendants' refusal to act as Plaintiff's thesis advisor and dismissing Plaintiff from the lab

caused Plaintiff to be dismissed from the University's graduate program.").) And Plaintiff does not establish a First Amendment claim based on her inability to secure a thesis advisor.

  i. Dr. L. Lange

Plaintiff has alleged that she first accused her thesis advisor, Dr. L. Lange, of misappropriating her research in March 2019. Dr. L. Lange did not resign as her thesis advisor until June 2020. Given the lengthy temporal break[2] between Plaintiff's alleged protected activity and the adverse action, Plaintiff needs more factual support for her claim of retaliation. *See Hom v. Squire*, 81 F.3d 969, 975 (10th Cir. 1996) (concluding that plaintiff could not succeed on First Amendment retaliation claim because he had not produced "adequate evidence of a causal connection" between his speech and his dismissal, in part because his speech occurred in 1987–88 but he was not terminated until 1989); *Doerr v. Colorado Div. of Youth Servs.*, 95 F. App'x 295, 298 (10th Cir. 2004) ("[T]he one-year time lapse is too great to draw a causal connection between his protected grievance and his termination."). Plaintiff has failed to set forth any such supporting facts. Accordingly, Plaintiff's retaliation claim against Dr. L. Lange for resigning as her thesis advisor fails for lack of causation.

---

[2] Plaintiff alleges that she continued to complain of the same issue—not crediting her work—throughout 2019 and 2020, including on June 4, 2020, about two weeks before Dr. L. Lange resigned as her thesis advisor and dismissed her from the lab. (ECF 12, ¶¶ 50-55.) But Plaintiff admits Dr. L. Lange was aware of her complaint as early as March 2019, more than a year before the alleged adverse action. (ECF 12, ¶ 50.) Accordingly, mere temporal proximity to the June 4, 2020 phone call does not support the inference that Plaintiff was dismissed in retaliation of her complaints. *See, e.g.*, *Hesling v. Seidenberger*, 286 F. App'x 773, 775 (3d Cir. 2008) (unpublished) (holding that the temporal proximity was not supportive of causation where the alleged protected activity was ongoing and had been going for two years prior to adverse action).

ii. Dr. E. Lange

Plaintiff's claim against Dr. E. Lange rests on two allegations: (1) that, while aware of Plaintiff's complaints against Dr. L. Lange, Dr. E. Lange offered to serve as her thesis advisor on June 14, 2020, and (2) a week later, he refused to do so. (ECF 12, ¶¶ 55, 60, 62.) Not only do these allegations utterly fail to state a claim of damages for retaliation against Dr. E. Lange personally, but they are completely frivolous.

iii. Dr. Matthew Taylor and Dr. Tamim Shaikh

As an initial matter, the claims against Dr. Taylor and Dr. Shaikh are time-barred.[3]

The statute of limitations period for a claim brought under Section 1983 is determined by "reference to the appropriate state statute of limitation and the coordinate tolling rules." *Fogle v. Pierson*, 435 F.3d 1252, 1258 (10th Cir. 2006). In Colorado, it is two years. *See* C.R.S. § 13–80–102(1)(g); *Hunt v. Bennett*, 17 F.3d 1263, 1265 (10th Cir. 1994). A Section 1983 claim accrues when "the plaintiff knows or has reason to know of the injury which is the basis of his action." *Hunt*, 17 F.3d at 1266.

Plaintiff alleges that Dr. Taylor refused to serve as her thesis advisor on or about July 2, 2020. (ECF 12, ¶ 67.) With respect to Dr. Shaikh, Plaintiff alleges that on July 1, 2020, Dr. Shaikh imposed an "unreasonable" deadline for her to secure a new advisor, and on August 3, 2020, Dr. Shaikh signed a letter dismissing her from the HMGGP track of the MST program. (ECF 12, ¶¶ 66, 68.) The Amended Complaint, which first named Drs. Taylor and Shaikh as

---

[3] "A statute of limitations defense may be appropriately resolved on a [Rule] 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished. *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016) (quotation marks omitted, brackets in original).

14

defendants, was filed on November 17, 2022—more than two years after the events Plaintiff complains of. Accordingly, her Section 1983 claim against these Defendants is time-barred.

The relation-back doctrine under F.R.C.P. 15(c) does not apply. Under Rule 15(c)(1), the amendment must assert "a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading" and "the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) *knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity*." F.R.C.P. 15(c)(1)(B), (C) (emphasis added).

Plaintiff clearly knew the identities of Dr. Taylor and Dr. Shaikh. There is no mistake as to the proper defendant's identity with respect to Plaintiff's allegation that Dr. Taylor improperly refused to act as her thesis advisor. Nor is there a mistake about the identity of the person who signed the letters giving Plaintiff a 30-day deadline to secure a new advisor or dismissing Plaintiff from the HMGGP track. Because the relation-back doctrine does not apply to save Plaintiff's claims against Defendants Taylor and Shaikh, they should be dismissed as time-barred.

Further, as with Dr. E. Lange, Plaintiff's claims against Dr. Taylor and Dr. Shaikh have no factual support. Plaintiff has alleged that in April 2020, she disclosed her complaints about Dr. Gutierrez-Hartmann and Dr. L. Lange to Dr. Taylor. (ECF 12, ¶ 53.) She claims that three months later, in July 2020, when Plaintiff approached Dr. Taylor with a request to serve as her thesis advisor, he refused in retaliation for her complaints. Even assuming, without conceding, that refusal to serve as a thesis advisor is an injury satisfying the second element of a retaliation

15

claim, *see Van Deelen*, 497 F.3d at 1155–56, Plaintiff sets forth no facts to support any causal connection between the two events.

Plaintiff's claim against Dr. Shaikh is even more tenuous: she claims that on June 30, 2020, she disclosed to Dr. Shaikh her complaints about Dr. L. Lange, and that the next day he imposed an "unreasonable" deadline for her to find a new thesis advisor. (ECF 12, ¶¶ 64-66.) Plaintiff does not explain why the 30-day deadline was unreasonable. Nor does Plaintiff allege that she requested additional time, and Dr. Shaikh denied her request.

Further, even assuming, once again, that the 30-day deadline was an injury supporting a First Amendment retaliation claim, Plaintiff fails to show any kind of causal connection to support a retaliatory motive. And Plaintiff's subsequent dismissal from the HMGGP track was due to her inability to secure a thesis advisor, as Plaintiff admits, not because of some retaliatory motive by Dr. Shaikh. (ECF 12, ¶¶ 68, 144.)

### IV. Qualified immunity bars Plaintiff's claim against Individual Defendants sued in their individual capacity.

"[T]he doctrine of qualified immunity shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights." *Janny v. Gamez*, 8 F.4th 883, 913 (10th Cir. 2021) (alteration in original) (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001)). A court employs a two-part test to analyze a qualified immunity defense, asking "whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of [the official's] alleged misconduct." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). "After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff." *Medina v. Cram*, 252

F.3d 1124, 1128 (10th Cir. 2001). "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Id.*

"To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). The plaintiff must point to "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Estate of Booker v. Gomez*, 745 F.3d 405, 427 (10th Cir. 2014). "'[E]xisting precedent must have placed the statutory or constitutional question beyond debate to clearly establish a right." *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018) (quoting *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018)).

First, Plaintiff cannot point to a Supreme Court or Tenth Circuit decision that resigning or refusing to serve as a graduate student's Ph.D. thesis advisor constitutes an injury supporting a First Amendment retaliation claim. Nor can Plaintiff point to any clearly established authority to support her allegation that a 30-day deadline to secure a new advisor is an injury that would chill a person of ordinary firmness from continuing to engage in protected activity. Finally, as discussed above, Plaintiff cannot establish a violation because her retaliation claims against Individual Defendants fail for lack of causation. Accordingly, the doctrine of qualified immunity bars Plaintiff's claim against the Individual Defendants sued in their individual capacity.

## CONCLUSION

Despite Plaintiff's effort to infuse her allegations with purported protected activity by making general and vague allegations regarding complaints about what appears to be a single incident with Dr. Arthur Gutierrez-Hartmann in 2016, her Amended Complaint fails short of

17

stating a claim of retaliation under Title IX. Plaintiff's own allegations establish that she did not complete the requirements of the Graduate School or the SOM's Promotions Committee, which is why she was dismissed and constructively dismissed from these programs. For the reasons, Plaintiff's claim under Title II of the ADA fails because, by Plaintiff's own admission, she was constructively dismissed for her refusal to comply with the Promotions Committee's requirement, not because of alleged perceived disability. Accordingly, all of Plaintiff's claims against the University should be dismissed for failure to state a claim.

Plaintiff's retaliation claim under Section 1983 against the Individual Defendants is barred by qualified immunity and for failure to state a claim.

**DATED:** January 27, 2023.    Respectfully submitted:

*s/ Hermine Kallman*
Hermine Kallman
Associate University Counsel
Special Assistant Attorney General
University of Colorado
Office of University Counsel
1800 Grant Street, Suite 700
Denver, CO 80203
303-860-5691
Hermine.Kallman@cu.edu

*Attorney for Defendants*

## CERTIFICATE OF SERVICE

      I hereby certify that on January 27, 2023, I electronically filed the foregoing with the Court's electronic filing system (CM/ECF) which will automatically cause notification to be sent to the following counsel of record:

Igor Raykin #43081
Michael Nolt #50668
Kishinevsky and Raykin
2851 South Parker Road, Suite 150
Aurora, Colorado 80014
Ph: (720) 748-8888
Fax: (720) 748-8894
igor@coloradolawteam.com
michael@coloradolawteam.com

                                          *s/ Linda Ruth Carter*
                                          Linda Ruth Carter, Paralegal