IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Civil Action No. 22-cv-01592-LTB-SP

MINDY SZETO,

    Plaintiff,

v.

UNIVERSITY OF COLORADO, by and through The Regents of the University of Colorado, a body corporate;
LESLIE LANGE;
ETHAN LANGE;
MATT TAYLOR;
TAMIM SHAIKH; and
UNKNOWN INDIVIDUALS DSIGNATED AS JOHN DOES,

    Defendants.

---

### ORDER

---

This case is before me on Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) [Doc # 22]. After consideration of the motion, all related pleadings, and the case file, I grant Defendants' motion in part and deny it in part as set forth below.

### I. Background

This action arises out of Plaintiff's enrollment in Defendant University of Colorado's ("the University") Medical Scientist Training ("MST") dual-degree program. Doc # 13-1, ¶ 23. This program allows students to earn both an M.D.

degree and a Ph.D. degree. *Id.* at ¶ 20. The following facts set forth in Plaintiff's First Amended Complaint are accepted as true for purposes of Defendants' motion:

Beginning in 2016, Dr. Arthur Guiterrez-Hartmann, former program director for the MST program, subjected Plaintiff to sexual harassment, intimidation, and bad faith by, among other things, inappropriately touching her; verbally and physically threatening her during meetings; and threatening her future in the MST program. *Id.* at ¶¶ 25-32. Plaintiff reported Dr. Guiterrez-Hartmann's conduct to University officials on multiple occasions. *Id.*, *e.g.*, ¶¶ 35-39, 40, 43, 45 & 47.

By letter dated October 4, 2017, the medical school's Promotions Committee recommended that Plaintiff schedule an appointment with the Colorado Physicians Health Program ("CPHP"). *Id.* at ¶¶ 34. The Promotions Committee sent Plaintiff a second letter requiring her to schedule an appointment with CPHP in January of 2018. *Id.* at ¶ 41. This requirement was rescinded in May of 2018 because Plaintiff was solely enrolled in the Ph.D. portion of the MST program at that time. *Id.* at ¶ 48.

In March of 2018, Plaintiff joined Defendant Leslie Lange's research laboratory for the Ph.D. portion of the MST program. *Id.* at ¶ 46. Beginning in March of 2019, Plaintiff communicated concerns to Defendant Leslie Lange; her husband, Defendant Ethan Lange; Defendant Matt Taylor; and others about getting credit for her work. *Id.* at ¶¶ 50-53, 55 & 64. Plaintiff also continued to report Dr. Guiterrez-Hartmann's behavior. *Id.*, e.g., ¶¶ 52-53; 55-56 & 67.

In June of 2020, Defendants Leslie Lange and Ethan Lange both refused to be Plaintiff's thesis advisor going forward and Plaintiff was dismissed from Defendant Leslie Lange's lab. *Id.* at ¶¶ 62-63. The University advised Plaintiff that she needed to find a new thesis advisor by July 31, 2020 to remain in the Human Medical Genetics and Genomics Graduate Program ("HMGGP") for her Ph.D. studies. *Id.* at ¶ 66. Plaintiff was unable to meet this deadline and was dismissed from the HMGGP effective August 3, 2020. *Id.* at ¶ 68. Plaintiff's appeal of her dismissal from the HMGGP was unsuccessful, and she was denied enrollment in the University's molecular biology program ("MPB") as an alternative track to earn her Ph.D. *Id.* at ¶¶ 70-73.

On August 18, 2020, Plaintiff was advised that she was being dismissed from the MST program because of professionalism issues; poor progress in her Ph.D. work; and her dismissal from the HMGGP and the Ph.D. graduate school. *Id.* at ¶¶ 74-76. Following her dismissal, the MST program provided Plaintiff's dismissal packet to the medical school's Promotions Committee. *Id.* at ¶ 82. The Promotions Committee notified Plaintiff that she would have to be evaluated by CPHP before she could resume her studies at the medical school. *Id.* at ¶ 83. Plaintiff appealed the CPHP evaluation requirement and requested that any evaluation be performed by a neutral evaluator. *Id.* at ¶¶ 85-86. Plaintiff's appeal and request were denied. *Id.* at ¶¶ 87 & 90.

Plaintiff applied to the medical school at Louisiana State University ("LSU"). *Id.* at ¶ 99. The University provided two transfer letter to LSU which stated that

3

Plaintiff had taken 4 years off from medical school *Id.* at ¶¶ 104 & 108-109. Plaintiff asserts that this statement was misleading because she had been attending the Ph.D. portion of the MST program during this 4-year period. *Id.* at ¶ 105. Following an interview, LSU denied Plaintiff's application to its medical school. *Id.* at ¶¶ 110-111.

Based on these and the remaining allegations in her First Amended Complaint, Plaintiff asserts four claims against the University for (1) Title IX retaliation predicated on 2020-2021 CPHP referrals and constructive discharge from the medical school; (2) Title IX retaliation predicated on dismissal from the Ph.D. program; (3) Title IX retaliation predicated on "blackballing" Plaintiff from transferring to LSU; and (4) violation of Title II of the ADA. Plaintiff also asserts a § 1983 claim against each of the individual Defendants for retaliation in violation of her First Amendment rights. Defendants seek dismissal of all of Plaintiff's claims for failure to state claims upon which relief may be granted.

## II.  Standard of Review

Under Rule 12(b)(6), "[d]ismissal is appropriate only if the complaint, viewed in the light most favorable to plaintiff, lacks enough facts to state a claim to relief that is plausible on its face." *United States ex rel. Conner v. Salina Regional Health Center, Inc.*, 543 F.3d 1211, 1217 (10th Cir. 2008) (quotations and citations omitted). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*citing Bell*

4

*Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To survive a motion to dismiss, a plaintiff must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp.*, 550 U.S. at 555. *See also Iqbal,* 556 U.S. at 678 (a complaint will not suffice if it tenders "naked assertions devoid of further factual enhancement").

## III.  Analysis

### A. Plaintiff's Title IX Retaliation Claims

Title IX prohibits discrimination by recipients of federal education funding and supports a private cause of action for retaliation because that person has complained of sex discrimination. *Jackson v. Birmingham Bd. of Educ.,* 544 U.S. 167, 173-174 (2005). "[T]o state a claim for retaliation under Title IX, a plaintiff must allege that: (1) he or she engaged in protected activity; (2) defendant had knowledge of the protected activity; (3) materially adverse school-related action was taken against Plaintiff; and (4) there was a causal connection between the protected activity and the adverse action." *Tackett v. Univ. of Kan.,* 234 F. Supp.3d 1100, 1109 (D. Kan. 2017) (citations omitted). To establish the requisite causal connection, Plaintiff must show "evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Williams v. W.D. Sports, N.M., Inc.,* 497 F.3d 1079, 1091 (10th Cir. 2007) (citation omitted).

1. **Plaintiff's Title IX Retaliation Claim Predicated on Referral to CPHP and Constructive Discharge from the Medical School**

Plaintiff's first claim for relief alleges that the University's CPHP evaluation requirement caused her to "effectively [be] dismissed from the medical school" and "to suffer the humiliation and indignity of having her mental health called into question." Doc # 13-1, ¶¶ 117-18. Defendants first argue that this claim fails, in part, because the requirement that she be evaluated by CPHP does not constitute a materially adverse action. Viewing the alleged facts in the light most favorable to Plaintiff, I disagree.

The Tenth Circuit liberally defines adverse action to include "acts that carry a significant risk of humiliation, damage to reputation, and a concomitant harm to future employment prospects." *Annett v. Univ. of Kan.,* 371 F.3d 1233, 1239 (10th Cir. 2004) (citations omitted). Plaintiff somewhat overreaches in arguing that the CPHP evaluation requirement caused her dismissal from the medical school since it was her failure to comply with this requirement that led to her dismissal. It is also unclear if the CPHP evaluation requirement alone would have any impact on Plaintiff's future earnings or employment. Nonetheless, under the liberal definition of this term and the applicable standard of review, I conclude Plaintiff has sufficiently alleged a materially adverse school-related action to support her first claim for Title IX retaliation.

Defendants also argue that that Plaintiff's first claim for relief fails because there was no retaliatory motive for the CPHP evaluation requirement or Plaintiff's dismissal from the medical school. In support of this argument, Defendants cite

6

Plaintiff's allegations that she had "serious physical health issues" while studying in the medical school and that the evaluation was attributable to the University's "perception of Plaintiff as having a disability." Doc # 13-1, ¶¶ 30-32 & 34. These allegations do suggest a legitimate, non-retaliatory basis for the Promotions Committee's requirement that Plaintiff undergo a CPHP evaluation. The absence of evidence regarding the University's CPHP referral process and the close temporal proximity of Plaintiff's initial complaints about Dr. Gutierrez-Hartmann and the first CPHP referral, however, is sufficient to satisfy the causation element of Plaintiff's first claim for Title IX retaliation at the pleading stage of this case.

  Finally, Defendants argue that Plaintiff's first Title IX retaliation claim fails because she does not allege that any member of the Promotions Committee was aware of Plaintiff's protected activity. It is plausible, however, that one or more members of the Promotions Committee was aware of Plaintiff's alleged ongoing complaints of sexual harassment to various University officials including the senior dean of the medical school. *See* Doc # 13-1, ¶ 37. The plausibility of such knowledge is enhanced by Plaintiff's allegation that CPHP was aware of her complaints. *Id.* at ¶ 98. Additionally, the authority Defendants cite in support of dismissal due to lack of knowledge involved summary judgment motions after Plaintiffs had the benefit of discovery. *Davis v. Unified Sch. Dist. 500,* 750 F.3d 1168, 1172-1173 (10th Cir. 2014) (summary judgment on retaliation claim was proper where there was no evidence that any decisionmaker who passed plaintiff over for a promotion knew of protected activity); *Williams v. Rice,* 983 F.2d 177, 181 (10th Cir. 1993) (summary judgment on

7

retaliation claim was proper where plaintiff failed to present any evidence that he made discrimination complaints or that supervisor who took adverse action knew of them).

In sum then, Plaintiff has sufficiently pled the challenged elements of a claim for Title IX retaliation based on the CPHP evaluation requirement and constructive dismissal from the medical school to survive Defendants' motion to dismiss.

### 2. Plaintiff's Title IX Retaliation Claim Predicated on Dismissal from the Ph.D. Program

Defendants argue that Plaintiff has not plausibly pled that there was a causal connection between her protected activity and her dismissal from the Ph.D. program. Instead, Defendants assert that Plaintiff's allegations establish that her dismissal was the result of her failure to find a thesis advisor and for unprofessional conduct. Viewing the alleged facts in the light most favorable to Plaintiff, I disagree.

Plaintiff alleges that she reported Dr. Gutierrez-Hartmann's behavior to University officials while enrolled in the Ph.D. portion of the MST program and that the reasons given for her dismissal from the Ph.D. program and the chain of events that led to it were pretextual and unwarranted. *See e.g.* Doc # 13-1, ¶¶ 47, 52, 53, 65, 71 & 76. Plaintiff also acknowledges, however, that she had ongoing issues with Defendant Leslie Lange and that she was unable to unable to find a thesis advisor within the HMGGP. *See e.g. id.* at ¶¶ 50, 51, 53, 66 & 67.

Issues unrelated to Plaintiff's complaints of sex discrimination may prove to be a legitimate and/or non-retaliatory basis for Plaintiff's dismissal from the Ph.D. program but Plaintiff has plausibly pled that her dismissal was retaliatory at this

8

stage of the case. Among other things, Plaintiff's inability to secure a thesis advisor within the HMGGP or be permitted to transfer to the MPB could, upon further development of the underlying facts, prove to be the result of retaliatory conduct by the University. Further development of the underlying facts is also warranted before it can reasonably be concluded that graduate school dean Dr. David Engelke conducted an independent review of Plaintiff's dismissal from the Ph.D. program that broke the chain of causation as argued by Defendants.

### 3. Plaintiff's Title IX Retaliation Claim Predicated on "Blackballing"

In support of her Title IX retaliation claim predicated on "blackballing," Plaintiff alleges that Defendants provided misleading transfer letters to LSU. Specifically, Plaintiff alleges that these letters were misleading because they did not acknowledge Plaintiff's attendance in the Ph.D. portion of the MST program during the four years she was absent from the medical school, making it "appear as though [Plaintiff] was trying to come back to medical school after a four-year leave of absence." *Id.* at ¶ 109. Plaintiff further alleges that she "would have been admitted [to LSU] but for these letters." *Id.* at ¶112.

Defendants argues that this claim fails because it is not plausible that the transfer letters caused LSU to deny Plaintiff admission to its medical school since her leave of absence to attend the Ph.D. portion of the MST program could have been easily explained during her interview or by a review of her other application materials. I agree. Even under the liberal standard governing Rule 12(b)(6) motion, this claim strains credulity. This claim also lacks any factual allegations to support

9

Plaintiff's conclusory assertion that she would have been admitted to LSU's medical school but for Defendants' purportedly misleading transfer letters. *See Iqbal,* 556 U.S. at 678 (a complaint will not suffice if it tenders "naked assertions devoid of further factual enhancement"). Defendants are therefore entitled to the dismissal of Plaintiff's Title IX retaliation claim predicated on the University's alleged "blackballing" of Plaintiff's transfer to LSU.

### B. Plaintiff's Claim Under Title II of the ADA

To state a viable claim under Title II of the ADA, a plaintiff must allege

> (1) that he or she is a qualified individual with a disability; (2) that he or he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability.

*J.V. v. Albuquerque Pub. Sch.,* 813 F.3d 1289, 1295 (10th Cir. 2016) (citation omitted).

Plaintiff's fourth claim for relief alleges that the University discriminated against her on the basis of her perceived disability by requiring her to be evaluated by CPHP and constructively discharging her from the medical school. Doc # 13-1, ¶ 135. For purposes of the motion, Defendants do not challenge that Plaintiff was perceived as having a disability but argue that the CPHP evaluation requirement was not a discriminatory act. I am unable to decide this issue, however, without further development of the surrounding fact and circumstances relating to the CPHP referral process.

## C. Plaintiff's § 1983 Claims for First Amendment Retaliation Against the Individual Defendants

By failing to respond, Plaintiff has conceded Defendants' argument that her § 1983 claims for First Amendment retaliation cannot be asserted against the individual defendants in their official capacities. *See also Elephant Butte Irr. Dist. of New Mexico V. Dep't of Interior,* 160 F.3d 602, 607-608 (10th Cir. 1998) (§ 1983 claims for damages against public officials in their official capacity are barred by the Eleventh Amendment). I therefore need only analyze these claims as asserted against the individual defendants in their individual capacities.

### 1. Sufficiency of Claims

To establish her § 1983 claim for First Amendment retaliation against each Defendant in their individual capacity, Plaintiff must show that: (1) she engaged in constitutionally protected activity; (2) each Defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) her exercise of the constitutionally protected activity substantially motivated each Defendant's adverse action. *Van Deelen v. Johnson,* 497 F.3d 1151, 1155-1156 (10th Cir. 2007).

For purposes of the motion, Defendants concede that Plaintiff engaged in constitutionally protected activity and that the individual defendants' actions would deter others from engaging in the same activity. Doc # 22, p. 12. I therefore limit my analysis to whether Plaintiff has plausibly pled a causal connection between her complaints and the adverse actions taken by the individual defendants and whether this claim is time-barred with respect to certain individual defendants.

11

### a. Plaintiff's § 1983 Claim Against Defendant Leslie Lange

Defendants argue that temporal proximity alone is insufficient to establish that Defendant Leslie Lange's dismissal of Plaintiff from her lab and refusal to continue as her thesis advisor in June of 2020 were retaliatory since Plaintiff first made protected communications to her in March of 2019. In response, Plaintiff argues that Defendants ignore allegations that her protected communications to Leslie Lange were ongoing and most recently made a few weeks before Leslie Lange's alleged retaliatory actions against her.

Neither party cites controlling authority in support of their arguments regarding temporal proximity, and I find the analysis in *Hesling v. Seidenberger,* 286 Fed. App'x 773, 775 (3d Cir. 2008), unpersuasive under the facts alleged here. In the absence of compelling authority to the contrary, I conclude that Plaintiff has plausibly pled that her ongoing complaints to Leslie Lange culminated in the retaliatory dismissal of Plaintiff from her lab and Leslie Lange's refusal to continue as Plaintiff's thesis advisor. While Defendants attribute Leslie Lange's actions to an ongoing dispute between her and Plaintiff, the nature of that dispute stems from Plaintiff's alleged First Amendment protected activity. I therefore conclude that Defendants' motion to dismiss fails with respect to Plaintiff's § 1983 claim against Leslie Lange.

### b. Plaintiff's § 1983 Claim Against Defendant Ethan Lange

Plaintiff alleges that Defendant Ethan Lange offered to serve as Plaintiff's thesis advisor with full knowledge of her ongoing protected complaints about Dr.

12

Gutierrez-Hartmann and Defendant Leslie Lange but then withdrew his offer a week later. Since Ethan Lange's initial offer was made with full knowledge of Plaintiff's protected activity, it is not plausible that he subsequently withdrew that offer in retaliation for that same protected activity. I therefore conclude that Plaintiff has failed to state a plausible § 1983 claim against Ethan Lange.

### c. Plaintiff's § 1983 Claim Against Defendant Matt Taylor

Plaintiff alleges that she made protected communications to Defendant Matt Taylor in April and July of 2020. Doc # 13-1, ¶¶ 53 & 67. Plaintiff further alleges that she asked Dr. Matthew Taylor to be her thesis advisor in July of 2020 but he refused "citing pretextual 'professionalism issues'" that did not exist." *Id.* at ¶ 67.

Defendants first argue that Plaintiff's § 1983 claim against Matt Taylor is time-barred because he was added as a defendant after the applicable 2-year statute of limitations had expired. Plaintiff argues in response that her claim against Matt Taylor is not time-barred pursuant to Fed. R. Civ. P. 15(c)(1)(B) because it arose out of the conduct, transaction, or occurrence set out in her original complaint and therefore relates back to the date of its filing. Because Plaintiff's amended complaint added Matt Taylor as a new party, however, the requirements of Fed. R. Civ. P. 15(c)(1)(C) must also be satisfied for Plaintiff's § 1983 claim against him to relate back to the filing date of the original complaint. *Kalbaugh v. Jones,* 807 F. App'x 826, 832 (10th Cir. 2020). *See also Garret v. Fleming,* 362 F.3d 692, 696 (10th Cir. 2004) (substitution of named defendants for unknown "John Doe" defendants amounted to adding a new party).

13

Rule 15(c)(1)(C) requires that the party added "(i) [receive] such notice that it will not be prejudiced by defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the party's identity." Since Plaintiff's amended complaint asserts entirely new allegations concerning direct communications she had with Matt Taylor, there could be no mistake regarding his identity that would bring his late addition to this case within the scope of Rule 15(c)(1)(C)(ii). Defendants are therefore entitled to the dismissal of Plaintiff's § 1983 claim against Matt Taylor on the basis that it was untimely. *See Sierra Club v. Okla. Gas & Elec. Co.,* 816 F.3d 666, 671 (10th Cir. 2016) ("A statute of limitations defense may be appropriately resolved on a [Rule] 12(b)(6) motion when the dates given in the complaint make clear that the right sued upon has been extinguished.").

It is also questionable whether Matt Taylor's refusal to act as Plaintiff's thesis advisor was sufficiently injurious to deter protected activity or retaliatory in nature. Having already determined that Plaintiff's § 1983 claim against Dr. Taylor is time-barred though, I need not make this determination.

### d. Plaintiff's § 1983 Claim Against Defendant Tamim Shaikh

Plaintiff alleges that she made protected communications to Defendant Tamim Shaikh in June of 2020 and that the next day he placed a 30-day deadline on Plaintiff to find a new thesis advisor to be approved by him. Doc # 13-1, ¶¶ 64 & 66. Plaintiff further alleges that Tamim Shaikh authored a letter that she received

14

on August 3, 2020, notifying her that she was being dismissed from the HMGGP effective immediately. *Id.* at ¶ 68.

Defendants argue that Plaintiff's § 1983 claim against Tamim Shaikh is also time-barred by the applicable statute of limitations. Here again, there could be no mistake by Plaintiff regarding Tamim Shaikh's identity since her amended complaint made entirely new allegations regarding direct communications with him. Tamim Shaikh's late addition to this case therefore also falls outside the scope of Rule 15(c)(1)(C)(ii), and Defendants are entitled to the dismissal of Plaintiff's § 1983 claim against him on the basis that it was untimely. *See Sierra Club, supra.*

 I also question whether Tamim Shaikh's requirement that Plaintiff find a new thesis advisor within 30-days and dismissal from the HMGGP when she failed to do so were retaliatory but need not address this alternative basis for the dismissal of Plaintiff's § 1983 claim against him.

### 2. Qualified Immunity Defense

Having concluded that Plaintiff has plausibly pled a § 1983 claim for First Amendment retaliation against Defendant Leslie Lange, Defendants argue that I must also consider whether this claim is nonetheless barred by the doctrine of qualified immunity. For purposes of their motion, Defendants concede that Plaintiff engaged in constitutionally protected activity. Doc # 22, p. 12. The only question regarding qualified immunity then is whether Leslie Lange's conduct in dismissing Plaintiff from her lab and refusing to serve as her thesis advisor violated Plaintiff's First Amendment rights. *See Leverington v. City of Colorado Springs,* 643 F.3d 719,

15

732 (10th Cir. 2011) (in resolving motion to dismiss based on qualified immunity, court considers whether the facts alleged make out a violation of a constitutional right and whether the right at issue was clearly established at the time of the defendant's alleged misconduct).

Defendants argue that Plaintiff cites no authority establishing that conduct such as that of Leslie Lange constitutes a violation of Plaintiff's First Amendment rights. In response, Plaintiff cites *Worrell v. Henry,* 219 F.3d 1197 (10th Cir. 2000), for the proposition that adverse decisions relating to promotion, transfer, and hiring are actionable First Amendment violations and argues that Plaintiff's ultimate dismissal from the Ph.D. program is a comparable adverse action. The link between Leslie Lange's actions and Plaintiff's dismissal from the Ph.D. program is far too attenuated to support such a comparison.

*Worrell* also recognizes, however, that "[a]n act taken in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper" and that "[t]he unlawful intent inherent in such a retaliatory action places it beyond the scope of … qualified immunity if the right retaliated against was clearly established." *Id.* at 1215 (quoting *DeLoach v. Bevers,* 922 F.2d 618, 620 (10th Cir. 1990)). This suggests that Leslie Lange's conduct in dismissing Plaintiff from her lab and refusing to serve as her thesis advisor may be sufficient to defeat a qualified immunity defense if proven to be retaliatory in nature. At a minimum, further briefing and

development of the underlying facts is necessary to determine whether Leslie Lange is entitled to qualified immunity on Plaintiff's § 1983 claim.

## IV. Conclusion

For the reasons set forth above, IT IS HEREBY ORDERED as follows:

1. Defendants' Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6) [Doc #22] is GRANTED IN PART and DENIED IN PART;

2. Defendants' Motion to Dismiss is GRANTED with respect to Plaintiff's Title IX retaliation claim against the University predicated on "blackballing" and Plaintiff's § 1983 claims against Defendants Ethan Lange, Matt Taylor, and Tamim Shaikh; and

3. Defendants' Motion to Dismiss in DENIED with respect to Plaintiff's remaining claims against the University and Plaintiff's § 1983 claim against Defendant Leslie Lange.

Dated: June 16, 2023 in Denver, Colorado.

BY THE COURT:

s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE